UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| KERRY CONSIDINE, | : | |
| Plaintiff, | : | CASE NO. 3:14-cv-1601 (VAB) |
| | : | |
| v. | : | |
| | : | |
| BROOKDALE SENIOR | : | |
| LIVING, INC., | : | AUGUST 21, 2015 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS
AND/OR TO COMPEL ARBITRATION**

Plaintiff, Kerry Considine, has filed a Complaint against her employer, Brookdale Senior Living, Inc. ("Brookdale"), alleging that it improperly denied her same-sex spouse health and dental insurance coverage. She claims that Brookdale's actions violate Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, the Equal Pay Act, 29 U.S.C. §206(d), and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60. Am. Compl. ¶¶33-43, ECF No. 19. She seeks a declaration that Brookdale violated all three statutes and that it must, "as a matter of law, [ ] make spousal health and dental insurance coverage benefits available to eligible employees with same-sex spouses on the same terms as made available to eligible employees with different-sex spouses." *Id.* at Prayers for Relief ¶1. She also seeks an injunction enjoining Brookdale from denying same-sex spousal health and dental benefits available to its employees. *Id.* at Prayers for Relief ¶2. While her First Amended Complaint also

1

seeks attorney's fees and costs, at oral argument held on August 18, 2015, she agreed to withdraw these claims.  *Id.* at Prayers for Relief ¶3.[1]

Before the Court is a motion submitted by Brookdale seeking to dismiss the case and compel arbitration.  Mot. To Dismiss, ECF No. 28.[2]  For the reasons that follow, the Second Motion to Dismiss and/or Compel Arbitration, ECF No. 28, is **GRANTED IN PART** in that the Court finds that the matter must be sent to arbitration for a determination on the question of arbitrability.  The remainder of the relief requested in the Second Motion to Dismiss is **DENIED AS MOOT**.

I. **FACTUAL ALLEGATIONS**

Ms. Considine alleges that she was hired by Brookdale in 2012 as a "licensed physical therapist" and currently works as an "Ancillary Services Manager" in three Brookdale facilities located in West Hartford and Farmingdale, Connecticut.  Am. Compl. ¶¶12-13, ECF No. 19.  She alleges that as part of her compensation for this job, she receives health and dental insurance, self-insured through Brookdale and administered through United Healthcare.  *Id.* ¶¶15-16.  She claims that Brookdale offers "qualified employees" the option of obtaining health and dental insurance coverage for their spouses, and that Ms. Considine is a "qualified employee" for the purposes of obtaining such coverage.  *Id.* ¶¶17-18.

---

[1] The day before the Court issued its ruling, Ms. Considine filed another amended complaint removing the claim for attorney's fees and costs.  Second Amended Complaint at Prayers for Relief, ECF No. 45.

[2] Brookdale filed its First Motion to Dismiss, ECF No. 15, in response to Ms. Considine's initial Complaint.  Without responding to this motion, Ms. Considine filed an Amended Complaint to which the Second Motion to Dismiss is addressed.  ECF No. 19.  The parties both agreed at oral argument, held on August 18, 2015, that this first motion to dismiss was moot.  Accordingly, it was denied as moot at the oral argument, ECF No. 44.

Ms. Considine alleges that she married her female spouse, Renee Considine, in Massachusetts on November 1, 2013. *Id.* ¶19. She claims that in October and November 2013, she asked Brookdale twice whether her female spouse, Renee Considine, could be added to and covered by her health and dental insurance plans as her spouse. *Id.* ¶¶21-23. Ms. Considine alleges that Brookdale responded to both of her inquiries and explained that it would not provide coverage because her spouse was the same sex. *Id*.

Ms. Considine claims that she filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 17, 2014. *Id.* ¶24. She alleges that she obtained a right to sue letter from the EEOC on October 1, 2014 and subsequently filed this lawsuit within the timeframe required by section 2000e-5(f)(1) of title 42 of the United States Code. *Id.* ¶¶9-10.

Ms. Considine also claims that after she filed her discrimination charge with the EEOC but before she received her right to sue letter, Brookdale informed its employees on February 19, 2014 that effective March 1, 2014, it would voluntarily provide same-sex spouses with health and dental insurance coverage. *Id.* ¶25.[3] Ms. Considine also alleges that Brookdale believes it is not legally required to offer insurance benefits to same-sex spouses and has chosen to do so voluntarily. *Id.* ¶¶26-28. Accordingly, she claims that Brookdale also believes it may rescind health and dental insurance benefits it currently provides to same-sex spouses at any time. *Id*. She claims that this position

---

[3] Ms. Considine's initial Complaint, ECF No. 1, did not contain these facts.

3

makes the benefits she currently receives "uncertain[ and] insecure," which "constitutes continued and ongoing discrimination based on sex." *Id.* ¶29-31.

## II. THE AGREEMENT TO ARBITRATE

Brookdale indicates that Ms. Considine signed an agreement to arbitrate certain disputes arising from her employment and has attached the agreement to its Second Motion to Dismiss for the Court's consideration. Ex. A, Employment Binding Arbitration Agreement, ECF No. 28-2 [hereinafter "Arbitration Agreement"]. Ms. Considine does not object to the accuracy or authenticity of the arbitration agreement provided by Brookdale. She also does not dispute that she signed the agreement.

The agreement provides that "[a]s a condition of [her] employment [ ], [Ms. Considine] agree[s] that any controversy or claim arising out of or relating to [her] employment relationship with [Brookdale] or the termination of that relationship, must be submitted for final and binding resolution by a private and Impartial arbitrator." *Id.* ¶1. The agreement then provides a list of "Claims Covered" in paragraph 1(a) and a list of "Claims Not Covered" in paragraph 1(b). Included among the covered claims are "any dispute concerning the arbitrability of any such controversy or claim." *Id.* ¶1(a)(i). The agreement also provides that covered claims:

> [i]nclude[ ], but [are] not limited to, any claim that could be asserted in court or before an administrative agency or claims for which you have an alleged cause of action, including without limitation claims for breach of any contract or covenant (express or implied); tort claims (not otherwise exluded [sic]); claims for discrimination (including but not limited to discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, mental or physical disability, or medical condition or other characteristics protected by statute); claims for wrongful discharge; violations of the Family and Medical Leave Act (FMLA); violations of confidentiality or breaches of trade secrets; and/or

4

> claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law…

*Id.* ¶1(a)(ii).

The agreement provides that "Claims Not Covered" include, among others not relevant here:

> [a] claim before the Equal Employment Opportunity Commission (or agency with concurrent jurisdiction); "[a] claim by [Ms. Considine] or [Brookdale] for injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information, for which we may seek and obtain relief from a court of competent jurisdiction…

*Id.* ¶¶1(b)(iv)-(v).

The agreement indicates that if the parties are unable to resolve the dispute informally, "either [Ms. Considine] or [Brookdale] may submit the dispute for resolution by final binding confidential arbitration under the Procedure." *Id.* ¶1(d). In this same subsection, the agreement also incorporates by reference into the "Procedure" the "Employment Dispute Resolution Rules of the American Arbitration Association ('AAA')." *Id.*

### III. SECOND MOTION TO DISMISS (ECF No. 28)

In its second motion, Brookdale argues that all of Ms. Considine's claims should be dismissed because (1) they fall under the scope of an arbitration agreement and, thus, must be resolved in arbitration; (2) her claims are not justiciable because they are moot and/or not ripe; and (3) that she fails to plausibly claim that she is entitled to the relief she seeks under Rule 12(b)(6). Given the strong federal policy favoring

5

enforcement of arbitration clauses, the Court must first address whether the parties have agreed to arbitrate the matter.  *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985) (holding that the Arbitration Act "divests the district courts of any discretion regarding arbitration" and that it requires the Court to compel arbitration on arbitrable claims when one of the parties files a motion to compel arbitration); *KPMG LLP v. Cocchi,* 132 S.Ct. 23, 25 (2011) ("The Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution…' 'require[ing] courts to enforce the bargain of the parties to arbitrate.'") (citations omitted); *see also Carvant Financial LLC v. Autoguard Advantage Corp.,* 958 F. Supp.2d 390, 395 (E.D.N.Y. 2013) ("If the dispute falls within the scope of the arbitration clause, the 'role of the court ends and the matter is one for arbitration.'") (citation omitted).

The parties do not dispute that the arbitration agreement is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §1 *et seq.*  Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  It also provides that written agreements to arbitrate are generally enforceable and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. §2.

"In the context of motions to compel arbitration brought under the [FAA] [ ] the [C]ourt applies a standard similar to that applicable for a motion for summary judgment."  *Bensadoun v. Jobe-Riate,* 316 F.3d 171, 175 (2d Cir. 2003) (citations

omitted); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10cv1488(WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying the same standard in the context of a motion to compel arbitration under an employment arbitration agreement of federal statutory claims, including a Title VII claim).  To grant the motion, as with a summary judgment motion, the Court must find that there are no genuine issues of material fact in dispute and that the moving party is entitled to the relief sought as a matter of law.  *See* Fed. R. Civ. P. 56(a); *see also Carvant Financial LLC v. Autoguard Advantage Corp.,* 958 F. Supp.2d 390, 395 (E.D.N.Y. 2013).

      In applying the FAA, the Court must examine "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir. 2002) (citation omitted); *see also McAllister,* 2011 WL 1299830, at *3 (applying the same test in the context of a motion to enforce an employment-based arbitration agreement where plaintiff asserted federal statutory claims, including a Title VII claim) (citation omitted).  If the moving party meets both elements of this two-part test "by a showing of evidentiary facts," the nonmoving party "may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."  *Oppenheimer & Co., Inc. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995) (citation omitted).  If the opposing party does not produce evidence showing that a triable matter of fact exists as to one of the elements of the two-part test, the Court must submit the matter to arbitration.  *Id.*

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "'Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *McAllister*, 2011 WL 1299830, at *3 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985)). Courts may invalidate arbitration agreements based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Hamilton,* 150 F.3d 157, 163 (2d Cir. 1998) (citation omitted).

Ms. Considine does not dispute that she signed an arbitration agreement with Brookdale, nor does she dispute the validity or enforceability of that agreement. Opp. Br. 5 &n.1, ECF No. 31 (explicitly noting that the she does not contest the "existence of a valid arbitration agreement"). Instead, she argues that her lawsuit falls clearly and unambiguously outside of the scope of the claims covered by the agreement. She reasons that because she only seeks injunctive relief, her claim falls under the list of claims that are not covered in subsection 1(b)(v) and, therefore, that it should not go to arbitration. *Id.* ("[T]his dispute boils down to a single question, i.e., whether the Plaintiff's claims – solely for declaratory and injunctive relief—fall squarely outside the clear terms of the parties' arbitration agreement.")

Brookdale argues that Ms. Considine's claim is one of sex discrimination, which falls under the list of claims that are covered by the agreement in subsection 1(a)(ii), regardless of whether injunctive or equitable relief is sought. Second Mot. to Dismiss 8-

9, ECF No. 28. It also argues that the very dispute that Ms. Considine raises, regarding the scope of the arbitration agreement, is for the arbitrator to decide because the agreement delegates questions of arbitrability to the arbitrator. *Id.* at 12-15. Because the Court agrees with this last argument, the matter must be sent to arbitration.

The Supreme Court has indicated that the question of who—the arbitrator or the Court—has the power to decide the threshold issue of arbitrability depends on what the parties have agreed about that particular matter. *First Options of Chicago, Inc.,* 514 U.S. *v. Kaplan,* 514 U.S. 938, 943 (1995) (citations omitted); *see also AT&T Techs. V. Commc'ns Workers of Am.,* 475 U.S. 643, 648 (1986) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (citations omitted). Issues of "arbitrability" include "gateway" questions, "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson,* 561 U.S. 63, 69-70 (2010) (citations omitted); *see also Schenieder v. Kingdom of Thailand,* 688 F.3d 68, 71 (2d Cir. 2012)("arbitrability is a term of art covering 'dispute[s] about whether the parties are bound by a given arbitration clause' [i.e., formation] as well as 'disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy' [i.e., scope].") (citation omitted) (alterations in original). Because the parties' dispute focuses on the scope of the arbitration agreement, it is squarely one of arbitrability. Accordingly, to ensure that it is enforcing the arbitration agreement as the parties intended, the Court must determine who the parties agreed should decide the scope of their arbitration agreement, before it

engages in any analysis of that issue. *See VRB Linhas Aereas S.A. v. MatlinPatterson Global Opportunities Partners II, L.P.,* 717 F.3d 322, 326-27 (2d Cir. 2013) (vacating a district court's decision to deny a request to confirm an arbitration award because the Court failed to answer the "initial question" of who should decide the scope of the arbitration agreement).

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *'question of arbitrability,'* is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Schenieder,* , 688 F.3d at 71 (alterations and emphasis in original); *see also First Options of Chicago, Inc.,* 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (citation omitted) (alterations in the original). Under this "clear and unmistakable" evidence test, if the contract is silent about who decides arbitrability, the issue is one for the Court to decide. But if the contract has a provision that appears to address the question of who may decide arbitrability, then the Court must interpret that provision and enforce it in accordance with its interpretation.

In interpreting the agreement, as with any other contract, the Court must consider the agreement as a whole and give "operative" effect to all provisions. *See O'Brien v. United States Fidelity & Guar. Co.,* 235 Conn. 837, 843 (1996) (citations omitted). "[W]hether the parties have agreed to submit to arbitration not only the merits of the dispute but the very question of arbitrability as well depends upon the intention manifested in the agreement they have made." *City of Bridgeport v.*

*Bridgeport Policy Local 1159, AFSCME, Council 15,* 183 Conn. 102, 104 (1981) (citation omitted); *see also Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir. 1995) (finding that while there is a federal policy "strongly" favoring arbitration, a court must also construe an agreement to arbitrate, like other contracts, in accordance with its terms) (citation omitted).

The agreement between Ms. Considine and Brookdale provides that covered claims include "any dispute concerning the arbitrability of any such controversy or claim."  Ex. A, Arbitration Agreement ¶1(a)(i).  The Court finds that this language indicates an "unmistakable and clear" intent to have the arbitrator decide the matter of arbitrability.  *See Rent-A-Center, West, Inc.,* 561 U.S. at 66, 68-70 (finding that a contract providing that '[t]he Arbitrator… shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including, but not limited to any claim that all or part of this Agreement is void or voidable' indicated that the parties agreed to delegate the issue of arbitrability to an arbitrator); *Estate of Caruso v. Harvest Mgmt. SUB, LLC,* No. CV136040891S, 2014 WL 929433, at *2 (Conn. Super. Ct. Feb. 6, 2014) (finding that a contract stating that "'[a]ny dispute regarding the enforceability and/or interpretation of [the arbitration agreement] shall itself be decided by the arbitrator and not by a Judge or a jury" delegated the issue of arbitrability in "explicit terms" to the arbitrator); *cf. Welch Grp., Inc. v. Creative Drywall, Inc.,* 215 Conn. 464, 467 (1990) ("'The intention to have arbitrability determined by an arbitrator can be manifested by an express provision or

11

...

...

through the use of broad terms to describe the scope of arbitration…'") (citation omitted)*.*

Moreover, even if the plain language of the contract were not dispositive on this point, the parties also incorporate a set of rules into their agreement, which delegate the authority to decide arbitrability to the arbitrator.  Ex. A, Arbitration Agreement ¶1(d).  The incorporated rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Ex. B, AAA Employment Arbitration Rules & Mediation Procedures at 17.  The Second Circuit has found that incorporation into an arbitration agreement of procedural rules that use this same language was sufficiently "unmistakable and clear" evidence of an intent to arbitrate arbitrability.  *See Contec Corp. v. Remote Solution, Co., Ltd.,* 398 F.3d 205, 208 (2d Cir. 2005) (finding that the parties' incorporation of rules into the arbitration agreement that "empower an arbitrator to decide issues of arbitrability" constituted "clear and unmistakable" evidence of their intent to delegate questions of arbitrability to an arbitrator) (citation omitted).

The Supreme Court has indicated that this type of agreement to arbitrate arbitrability is enforceable in the same way that the rest of the arbitration clause is, unless a party challenges the validity of the "precise agreement to arbitrate at issue." *Rent-A-Center, West, Inc.,* 561 U.S. at 70-71; *see also Am. Express Co. v. Italian Colors Restaurant,* 133 S.Ct. 2304, 2309 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including… 'the rules under which that arbitration

will be conducted.'") (citations omitted).  Because Ms. Considine does not make such a challenge, the Court must compel arbitration.[4]

Ms. Considine argues that Brookdale has sought to avoid this litigation by raising a mere "flicker of doubt" or a "wholly groundless" dispute as to whether the dispute may be arbitrated.  Opp. Br. 16, ECF No. 31 (quoting *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.,* 555 F. App'x 153, 155 (3d Cir. 2014); *Medicis Pharm. Corp. v. Anacor Pharms., Inc.,* C.A. No. 8095-VCP, 2013 Del. Ch. LEXIS 206, at *39-40 (Del. Ch. Aug. 12, 2013)).  However, Ms. Considine has not cited law from the Second Circuit indicating that courts in this jurisdiction engage in this inquiry.  Even if these tests do apply, the Court is satisfied that Brookdale has raised more than a so-called "flicker of doubt" about the arbitrability of the dispute.  Both sides rely on separate provisions of the agreement that, in this Court's view, do seem to compel opposite results.  Because the parties have delegated the issue of arbitrability to an arbitrator, the Court can say no more on the matter.[5]

---

[4] Ms. Considine does use the term unconscionable in her arguments, but she does not do so to challenge the validity of the agreement.  Instead, she argues that interpreting the injunctive relief carve-out to only apply to business torts, as Brookdale argues, would make the agreement unconscionable.  Opp. Br. 13-14, ECF No. 31.  She uses the idea of unconscionability as a guide for contractual interpretation, rather than arguing that the agreement is outright unconscionable.  Because her argument involves interpretation of the scope of the arbitration agreement, which the Court has ruled is a decision delegated to the arbitrator, the Court cannot engage in further analysis of this issue.

[5] Both sides also argue their positions under the so-called "positive assurance" test. *See e.g., AT&T Techs., Inc.,* 475 U.S. at 650 ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'").  However, this test applies when a Court is considering arbitrability.  Because the agreement delegates that decision to an arbitrator, the Court cannot engage in this inquiry.  *See Schneider,* 688 F.3d at 71-74 (applying only the "clear and unmistakable evidence"

Accordingly, the Court **GRANTS IN PART** Brookdale's Second Motion to Dismiss. The remainder of the relief requested in the motion is **DENIED AS MOOT.**

IV. **CONCLUSION**

For all of the foregoing reasons, Brookdale's Second Motion to Dismiss, ECF No. 28, is **GRANTED IN PART** in that the Court finds that the question of arbitrability must be decided by arbitration. The remainder of the Second Motion to Dismiss is **DENIED AS MOOT.**

The Clerk is directed to administratively close this case. Within thirty (30) days of a determination by the arbitrator on arbitrability, either party may file a motion to re-open the case if the arbitrator determines that the Court must resolve the parties' dispute.

**SO ORDERED** this 21st day of August 2015 at Bridgeport, Connecticut.

                                                          /s/ Victor A. Bolden
                                                          Victor A. Bolden
                                                          United States District Judge

---

test and not the "positive assurance" test to answer the question of who should decide arbitrability and noting that the "clear and unmistakable evidence" test is distinct from the "presumption of arbitrability" applied by the Court in determining whether a dispute falls within the scope of the agreement); *see also In re Lehman Bros. Securities and ERISA Litig.*, 706 F. Supp.2d 552, 558 (S.D.N.Y. 2010) (noting that the "clear and unmistakable evidence" test applies to the question of whether the issue of arbitrability was delegated to the arbitrator whereas the "positive assurance" test governs the "scope of the issues intended to be resolved by arbitration") (citations omitted); *accord City of Bridgeport,* 183 Conn. at 105-6 (finding that the "positive assurance test" has no application to the case once a court has determined that arbitrability is to be decided by arbitration).